PRIMMER V. PRIMMER.

1. **Will:** PROBATE: EVIDENCE: INCAPACITY AND UNDUE INFLUENCE: SUFFICIENCY ON APPEAL. A proceeding to probate a will is not triable *de novo* on appeal; and so, where the evidence, as in this case, was conflicting as to the alleged incapacity of the testator and the undue influence brought to bear upon him, the verdict of the jury cannot be disturbed in this court.

2. ———: UNDUE INFLUENCE: EVIDENCE OF. While there was no direct evidence that the proponent or any one in her behalf ever urged or solicited the testator to make the will in question, yet it appeared that she married the testator when he was on the verge of the grave, and there was evidence tending to prove that the purpose of herself and her parents and relatives in procuring the marriage to be consummated was to get possession of his property after his death, and other facts which showed that they created an opportunity to consummate such purpose by controlling the circumstances of the testator and preventing conversations with his relatives, at and prior to the time when the will was made, and it appeared that she showed no sorrow at his death, but made merry with her friends before his burial. *Held* that a verdict of undue influence based on evidence of this kind could not be disturbed in this court for want of evidence to support it.

3. ———: CONSPIRACY TO PROCURE: EVIDENCE: DECLARATIONS OF CO-CONSPIRATOR: FOUNDATION. Before the acts or declarations of an alleged co-conspirator are admissible as against another, a foundation must first be laid by proof sufficient, in the opinion of the judge, to establish *prima facie* the fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact. But such evidence need not be direct; and, in the nature of the case, it must usually be circumstantial.

4. ———: ———: ———: SUBSEQUENT DECLARATIONS OF CO-CONSPIRATORS. The declarations of a co-conspirator, made after the accomplishment of the common design, are not usually admissible against his co-conspirators. But the declarations of one of several co-conspirators to procure the execution of a will, made after the execution of it but prior to the death of the testator, may be, shown as against a co-conspirator seeking the probate of the will, because the object of the conspiracy cannot be said to be consummated until, by the death of the testator, the possibility of cancellation or modification has passed away.

*Appeal from Benton District Court—*HON. L. G.
KINNE, Judge.

FILED, OCTOBER 8, 1888.

PLAINTIFF is the widow, and defendant the mother,
of William H. Primmer, who died on the sixth of April,
1887.   After his death, an instrument purporting to be
his last will and testament was filed with the clerk of
the district court of the county.   He left no surviving
children and by the will all of his property was devised
to the widow.   Defendant resisted the admission of the
instrument to probate, on the ground (1) that the tes-
tator, when he signed it, was incompetent, owing to
physical and mental weakness, to execute a will; and
(2) that the execution of the instrument was procured
through the fraud and undue influence of the wife and
her relatives.   The issue was tried to a jury, who found
that the instrument was not the will of said William H.
Primmer, and the court entered judgment on the verdict
refusing to admit the instrument to probate.   Plaintiff
appeals.

*J. C. Traer* and *G. W. Burnham,* for appellant

*J. D. Nichols* and *G. M. Gilchrist,* for appellee.

REED, J.—William H. Primmer was about twenty-
two years old at the time of his death.   He and plaintiff

1. WILL: pro-
bate: evi-
dence: inca-
pacity and
undue influ-
ence : suffi-
ciency on ap-
peal.

were married on the eleventh of January,
1887.   He was a widower, and had been in
failing health for more than a year.   The
disease with which he died was consump-
tion of the lungs.   He had been advised by
a physician to go to a warmer climate, and on the day
after the marriage he started to the state of Kansas,
being accompanied by his mother.   He was not bene-
fited by the change of climate, but, on the contrary,
his disease grew worse, and on the ninth of March they
returned to the family home in Benton county.   At that
time he was weak, and much emaciated.   He remained

there about one week, when he was taken to the home of his wife's father, where he remained until the day on which he died ; when, at his own request, he was again removed to his mother's home, but died in a few hours after he arrived there. It was during the time that he was at the house of his father-in-law that the will was executed. The district court instructed the jury, in effect, that the instrument would not be defeated on the ground of the incapacity of the testator, unless it was shown that, at the time of its execution, he was incapable of weighing and comprehending the effect of the disposition he was making of his property, and of exercising reason and judgment with reference to the act. Also, that before they could find for the contestant on the other ground alleged, they must find that he was under an influence which amounted to coercion or restraint, and, in effect, destroyed his free agency ; and that the instrument was not the expression of his own desire or will, but that of the persons by whom he was influenced. No exceptions were taken to the charge ; but it was contended by counsel that, under the instructions, the finding should have been the other way, and that it finds no support in the evidence. It may be that if the cause was for trial here anew, and we were required to determine the question as to the sufficiency of the evidence, we would reach a conclusion contrary to the finding of the jury. On the question of the want of capacity of the testator the evidence appears to us to be weak ; but on that question, even, it cannot be said that there was no evidence which tended to establish the allegation that he was not capable of disposing of his property. The testimony of the scrivener who wrote the will tended strongly to prove that he comprehended the nature of the act he was doing, and its consequences, and that he was capable of exercising judgment and reason with reference to it. But, on the other hand, one of the subscribing witnesses to the will testified that he was very weak, both in body and mind, and that he was apparently in a condition of stupor, from which it was

difficult to arouse him; and other witnesses, who saw him shortly before and after, testified to substantially the same state of facts. There was a conflict in the evidence, then, upon that question, and different minds might fairly arrive at different conclusions with reference to it.

And the same is true as to the other allegation. There was no direct evidence that either the proponent or any of her relatives ever urged or solicited the testator to execute the will, or make that particular disposition of his property. But a course of conduct on her part, and on the part of her parents, was proven, the fair inference from which is that the only object they had in view when the marriage was consummated was to obtain possession of his property. Both she and they knew at the time of the marriage that he was on the verge of the grave. They knew, also, that he contemplated going to Kansas on the next day after the marriage in quest of health; and, at the solicitation of her father, his mother became his traveling companion and attendant on the journey, the wife remaining with her parents; and it was at their solicitation, and by their procurement, that he was removed, after his return, from the home of his mother to that of his father-in-law. And, while there, no opportunity was given his relatives to converse with him, except in the presence of the father-in-law, or some member of his family. None of his relatives were present when the will was executed, and this does not appear to have been entirely accidental. On the day of the marriage he executed a conveyance of his farm to the father-in-law, who, after his death, conveyed it to the widow. While it was shown that plaintiff treated her husband with kindness during his sickness, it was also made to appear that she felt no sorrow or bereavement at his death; for it was shown that she "made merry" with her young associates and friends before his body was borne to the grave. From these and other circumstances which were proven, the jury were warranted in concluding that the marriage was, on her part, a purely

2. ——: undue influence: evidence of.

mercenary venture. It was also shown that the father-in-law had obtained a great influence over him, and the evidence affords abundant grounds for the belief that he was under that influence when he executed the will. It is to be borne in mind that in disposing of the case we are governed by the rules applicable to ordinary actions. It is not triable *de novo* in this court. *Sisters of Visitation v. Glass*, 45 Iowa, 154; *Ross v. McQuiston*, 45 Iowa, 145; *In re Donnely*, 68 Iowa, 126. As to these questions, then, the case falls within the settled rule that, when the verdict of the jury or the finding of the trial court involves the determination of a question of fact as to which there was a conflict in the evidence, or a deduction from proven facts which could be fairly arrived at from those facts, it will not be disturbed.

Exception was taken to the order of the court admitting evidence of certain acts and declarations of the father and mother of plaintiff, done and made both before and after the execution of the will. The evidence was offered under the claim that a conspiracy had been entered into by plaintiff and her father and mother, the object of which was to obtain possession of the property; and that the marriage, the obtaining of the conveyance of the farm to the father, and his subsequent conveyance to her, and the procuring of the execution of the will, were all done in pursuance of that design. It was not denied that the rule is that the acts and declarations of one of a company of conspirators, done and made in pursuance of the concerted plan, are admissible as against all of the others. But it was contended that the foundation for the admission of the evidence was not laid by proof of the formation of the conspiracy alleged. The rule certainly is that, before the acts or declarations of an alleged co-conspirator are admissible as against another, a "foundation must first be laid by proof sufficient, in the opinion of the judge, to establish *prima facie* the fact of conspiracy between the parties, or proper to be laid before the jury as tending to establish such fact." 1 Greenl. Ev. sec. 111. It must be admitted

3. ——: conspiracy to procure: evidence: declarations of co-conspirator: foundation.

that there was no direct evidence of a conspiracy between the parties ; but such fact can seldom be proven by evidence of that character. It rarely happens that men publicly enter into combinations for the accomplishment of designs which can be effected only by secret means, and hence it is that the fact of such confederation can seldom be proven except by circumstantial evidence. As stated above, the acts and conduct of the parties were proven, and these had some tendency to show that they were acting in concert, and in pursuance of common designs. It does not appear whether the court, by its order, intended to hold that the circumstances proven afforded *prima-facie* evidence of the conspiracy, or only that they afforded sufficient grounds for submitting the question to the jury. In either view, however, we could not disturb the judgment because of the ruling ; for if the court found that the evidence established, *prima facie,* the existence of the conspiracy, the finding is not without support ; and if the intention was to submit the question to the jury, the evidence was properly admitted, to the end that the jury might consider the acts and declarations, if they found the fact of the conspiracy established.

But it was contended that the object of the conspiracy, if one existed, was to obtain the execution of the will ; and hence the evidence of the acts and declarations subsequent to that were not admissible. It is true that the acts and declarations of co-conspirators, after the accomplishment of the common design, are in the nature merely of admissions, and are admissible only against the one doing or making them. But the object of the conspiracy in the present case, if one existed, could be consummated only at the death of the testator ; for until that happened the design might be defeated by the modification or cancellation of the will. It included, therefore, the doing of whatever might be necessary to prevent such modification or cancellation, and it continued until his death. The court did not instruct the jury as to the

4. ——: ——: ——: subsequent declarations of co-conspirators.

effect of the evidence of the acts and admissions of plaintiff's father and mother, and she may have been prejudiced by that failure. But, as stated above, no exception was taken to the charge; nor has such omission been assigned as error. We cannot, therefore, consider that question. We do not find in the record any ground for disturbing the judgment, and it will be

AFFIRMED.